Good afternoon everyone. Hope you're well. Judge Cowen, how are you? I'm here on Zoom and I'll take away the thing is in the middle of the iPad here. I don't know why it's being left. Are you having trouble seeing? I can see I'm having problems, yes. Perhaps, let's see. Well, Judge, this is Greg over Zoom. Are you using your iPad? Is that what you said? I'm not using the iPad. I'm using my wife's computer here. Okay. Maybe just like move the mouse or move the cursor over the You're good now? I'm in the 20th century now. I'll get to the 21st later on. Well, what can hope, right? All right. Fabulous. Let's proceed then, counsel. Good afternoon, Your Honors. May I request five minutes of rebuttal? If that's what you'd like, absolutely. All right. Thank you, Your Honor. How do you pronounce your client's name correctly? The last name is Nkansah. N-K-A-N-S-A-H. Nkansah, okay. Of course, the first name is Steven. Go ahead, please. May it please the court. Thank you for allowing us to appear here and explain our case. It is in our appeal, it is our client's view that Judge Savage, trial judge, in error substituted his judgment for that of the jury. Went on a motion for summary judgment. He ruled that the plaintiff would not have won the underlying fraud case against the four individual defendants. Judge Savage ruled that the plaintiff could not satisfy the damages causation of a legal malpractice claim established by the Pennsylvania Supreme Court. Well, the standard, excuse me, the standard is quite high for establishing legal malpractice. The standard is correct, Your Honor. And you have to prove that he would have won. Well, the language that we tracked reads, the plaintiff must prove a case within a case by establishing by a preponderance of the evidence that he would have recovered a judgment in the underlying case. That's the standard, proving a civil case. Yes, and that denotes a balancing test, as I understand it. And in the context of a motion for summary judgment, all inferences are to be in favor of the defendant, if you will, in that motion. Now, in this case, Judge Savage, in our view, substituted his judgment for a number of factual things. He, that really could... Let's talk about the Zoldan testimony. Pardon? Talk about the Zoldan testimony first. The Zoldan testimony, I'm happy to do that. Started with a report and then a deposition, then an interview, several times that the plaintiff could have won. But also at his deposition, Mr. Zoldan testified that he would have won. And that particular... Well, let's say that's so, right? You have it in front of you. Could was mentioned several times. Correct. Right? Would, you'll correct me if I'm wrong, I remember like once. But whatever, both were mentioned. You'd agree that's equivocal. So how could that meet the... Just let's talk about Zoldan just for a moment. How does that meet the standard? In the case of Zoldan, he both wrote that the result would have been different, that the plaintiff would have prevailed. That was in his opinion. And he testified when I redirected him that he could have. And the language is in... Well, on your redirect, he said could. Yes, he did. That's not would by a preponderance of the evidence. Well, again, that I think with respect would be a question for the jury. On examination, Mr. Zoldan, you said six or seven times could have during your testimony, but now you're saying would have. Well, which is it? And Mr. Zoldan would explain. What inference would I as a district judge draw that would allow me to go forward? That this is a factual question and that it would be best suited for the jury's determination as to whether the plaintiff would have prevailed. And as I understand it in Pennsylvania, that that's really what we're looking for. We're looking to in the Zoldan statement or group of statements where he said I could have. It's in the eyes of the jurist. Wouldn't that be the case if there were dueling experts and one said could and your expert said would, right? You know, you could argue in that circumstance that's created a genuine dispute. Yes. And then go forward. But we're not talking about that, right? We're talking about your own person. So your own person isn't unequivocal. He's not unequivocal. Right. And on cross-examination, it was, you know, several different ways, you know, not cross-examination, you know what I mean. At the deposition, there are several different ways in which he continued to say could. Now you've tried to save the day and got a would out of him. But how does that, how does that help us? I thought we did save the day and I am smiling as you're smiling and I'm reacting to your honor, of course. But really, really, he did say would and that's the standard. And once it becomes something that the jury could properly consider, it really does become a jury question. Whether he does have a jury, not of Judge Savage, not of, with great respect to this court, not that it's not also within the province of this court. My belief is that Pennsylvania law permits that question to go to the jury. Now there is, in this case, ample evidence that Mr. Nikansa would have won. Let me ask you, and but the law is pretty clear, is it not, that you can't find facts in rendering an opinion? Yes, I would agree with that. And it's a legal interpretation. Well, tell me or help me why the judge and the lawyer and the affidavit in Columbia wasn't helping finding facts in this case. The affidavit was the statement by Mr Acosta of what he believed the Columbia law interpretation to be of what had happened. There were certain documents that were not produced. Um, the testimony was taken under oath. The absence of the documents was not explained. And Mr Acosta explained that under Columbia law, there's a negative inference that would obtain and would ensue, Your Honor. And that is the gist of what we think Judge Savage did not recognize in connection with his disposition of this case. He credited the designee, Mr Restrepo's testimony, and even evaluated Mr Restrepo's credibility. But their were two opportunities during the process to produce documents. One was through Mr Robert Towns during a deposition and a failure, of course, on the defendant in this case, his lawyer, to pursue a motion to compel and request for an audit much too late. But Mr Towns was in charge of the documents. He, uh, he did not produce any documents that demonstrated that monies transferred into beverages were in turn transferred to juices. Let me ask you on that question, right? So, uh, a background question. Appendix 236? Yes. Whose document is that? Um, I don't I don't know the source. I know that they're in the record, but I don't know who actually produced it. Here's the reason I ask, right? Because it doesn't match up with the wire, uh, transfer evidence, right? Because, um, if you if you look at 236, right, it talks about the investment and then the disposition. And when you match that up against the wire transfer evidence, there's a problem, right? I thought that it was accurate. I thought the overlay was accurate. Uh, the one thing I can say, let me suggest to you that there may be inaccuracies in it that might lead to different inferences. But with respect to the Byron Drayton, um, Byron Drayton, one of the original defendants, received funds, uh, on three different occasions, September 15, November 3 and November 4. And sorry, he received funds on two occasions, September 5 and November 3. And he was able through the transfers to show that the funds went to beverages. But in turn, those funds did not make it to, uh, juices. There was never an explanation offered. Well, in the, um, in the opinion in the underlying case, uh, the judge, um, had an explanation. I wondered if you could take prayer. Uh, yeah. Hold on one second. Yes, indeed. Right. Appendix 52. Page three of the opinion. Uh, now, um, are you with me? I am. I'm looking at page three of the opinion. So Mr McKenzie then began investing in wazoo juices. Once Mr McKenzie began to invest in wazoo juices, he needed a way to wire the money to the Colombian business because he did not wish to comply with certain governmental requirements for writing money to invest in Colombian businesses. He could not the wire the money directly to wazoo juices. So instead, on one occasion, he wired money to, uh, doton, uh, I gave Lucy another investor in wazoo juices and wazoo beverages. Mr. I Lucy then immediately rewired the money to wazoo juices. On two other occasions, Mr Nikonza asked Mr Drayton to wire money to wazoo beverages to be transferred to wazoo, uh, juices and Mr Drayton obliged. Mr Nikonza also indirectly provided money to wazoo juices. I'm sorry, wazoo juices. I'm not sure the rest of that's important, but that's three instances where ostensibly, uh, money went to, as reflected in 236 wazoo beverages that at least what was before Judge Prater, um, reflects ultimately went to wazoo juices. On that chart, 236, there are also two instances where there are wire transfer documents which were provided, um, that reflect that money went to wazoo juices. So, um, I'm just, you know, the assertion is, uh, none of this money complied with the intent of Mr Nikonza, yet it appears from the very few documents that we have and the court's conclusion, which I presume wasn't made up out of whole cloth, um, that money in fact went to wazoo juices, which is what Mr Nikonza intended. So you're going to help me with that, I'm sure. Some of the money did either go to juices or for the benefit of juices, such as the, um, Shipley firm in Britain. But my understanding of the facts is that the last three line items on appendix page 236 that originated, uh, with the plaintiff and made its way, made their way to Byron Drayton were transferred by Byron Drayton over to beverages. And that's as far as the trail went. Those three transfers, as I understand this total $68,000 more, substantially more than half of the dollars, uh, that Mr Nikonza destined for juices instead never made it to two or for the benefit of juices. Now, there's testimony in the underlying case. Um, uh, but you're not quarreling with Judge Prater's conclusions, right? Because you have a basis to. I really am not. And I don't want the record to reflect that. I am certainly not. Well, so, but Judge, but you mentioned a moment ago that Mr Drayton only received money on two occasions, right? At least one of those occasions is accounted for in Judge Prater's opinion, and it reflects that the money went ultimately to juices. So the money, as I understand it, Mr Drayton received a total of $70,000. Uh, and, uh, and did not transfer all actually any of those monies over to, um, juices. Instead, they went to beverages. Mr Drayton, I think, is a CPA too. I think he there's a certain inference from the absence of wire transfer information from beverages to juices that would give logical support for a negative inference. There are other things here too. As an example, Mr, what are we to do with the fact that that Judge Prater in the underlying action made those, um, made those findings? Um, I don't think that I might cross purposes or cross explanation with Judge Prater's explanation. I think Judge Prater took it as far as she could, but didn't really weigh in on this other information, the wire transfer information. It's my understanding, um, that, um, I understand that she just didn't address that in her opinion. What about the two instances, um, in 2 36 of Mr, uh, and I'm sorry if I'm butchering the name, Aya Bushi. Um, where the money, um, money went, uh, ultimately to juices. So we we understand that there is evidence of some of the money originated by Mr by the plaintiff into the hands of the individual defendants. In turn, some of that made it over from beverages to juices, but not all of it is the essence of your claim. Then that 68,000. Um, I'm sorry. I don't know the exact number of hundreds of dollars, but about $68,000 is the, um, crux of the evidence of ownership was ever issued. No agreement of sale was ever put together. In other words, we have here what we have here is a plaintiff who delivered funds and in various places, the parties agreed that he owned shares. Judge Savage concluded his opinion that he didn't own shares. But whether he did or he didn't, he didn't ever get anything back. Nothing. No, no evidence of ownership at all. Were these loans hypothetically or even possibly would have been loan paperwork. In short, Judge, there was nothing that was returned to Mr McCancer. And it's the juxtaposition of the failure of on his part to receive any ownership, anything at all, coupled with transfer funds over a period of short period of time, together with the inability of the parties to explain why all of the funds or most of the funds did not make it into juices. That really is the core explanation for why we think by preponderance of the evidence, a jury would conclude that Mr McCancer would have would have won the underlying case. If this is a diversity action and the amount in controversy, it sounds like because you're conceding that some went to juices. Maybe I'm wrong. I am asking the question. Is if the crux of the fraud is $68,000 and this is a diversity action, aren't we in trouble? No, and I consider that as a possibility. But no, because what was promised to Mr McCancer. You know what I mean by aren't we in trouble, right? Yeah, yeah, yeah. The below said the the the benchmark being more than 75,000. Um, no, because what Mr McCancer was promised was 60% of a company that he understood was worth $180,000. And he would get it as the money was paid in. And he paid in a total of about 108 or $109,000. And he received literally, literally zero, not figuratively, literally zero back. So I think it really does address your honor's question with respect to diversity. I've gone way beyond my time, and I appreciate the court's indulgence. I really do. Wait one second. Yes, Judge Cowen. I'd like to ask you one question. Try Council. What is your response to the defendant's contention that your the very same documents that they alleged should have been obtained in the first place. We cannot possibly establish a required case within a case. We My answer is we did not ever collect the share certificates because they were never issued. And that, to me, is significant and supportive of the We did collect testimony that did not, at least under Colombian law, adequately explain whether Mr McCancer was or was not a shareholder, whether he did or did not get shares issued to him, whether money did or did not get included in the operations there. I mean, we have enough here to prove a fraud. I believe we've Why did you need an expert? The way I read the expert's testimony is he was unable to say you're more likely to succeed than not to succeed. Why would you? Because if I interrupt you, that's the last thing I want to do, Your Honor. I apologize if I did because Pennsylvania law, as I understand it, requires in a legal malpractice case that an expert appear and be able to where it was varied from what was required and how that departure causally resulted in the damages. And that's the reason why Mr Zoldyn was, Your Honor, presented. I have a couple more. Of course. So the question I have with regard to the enumerated what you've done. But as I understand the record, correct me if I'm wrong, no motion to compel. Right. Right. And we haven't obtained the documents. I understand the notion of trying to draw an adverse inference by the absence of documents. I get that. But in this instance, right, there are none of the seek, find in a fraud case. So it makes me wary of whether under Pennsylvania law, the five requirements of a fraud could could be met even theoretically. Right. I know preponderance and so forth. I would like to draw the court's appendix pages 280 and 283. If I may, they're both emails. Actually, email traffic, I guess. I'm sorry, 82 and 83 to 280 and 283. Go ahead. Thank you. In the December 12, 2014 afternoon email, which is marked as appendix page 280 in the third substantive paragraph, it as the front person of Wazoo. And I view those words as pretty clearly demonstrating that he is operationally in charge. I feel compelled to give any and all information regarding Wazoo to all associates. And that, of course, is addressed to the remaining defendants and the plaintiff, Mr. Steven Acanza. And then eventually it came to pass that Mr Towns did not produce the documents evincing the transfer of funds from beverages to Towns. There's just nothing like that. The documents evincing ownership to Mr. Acanza. There's just nothing like that in this case. The other email is dated March 18, 2015, again in the afternoon. This is authored by Robert Towns, who I'll remark in both cases is speaking with the name Wazoo Beverages under his name, even though he's addressing juices. But in both of those emails, that's the way he signs. And in this, they clearly had a bit of a blow up. And I think Mr. Towns is trying to keep the lid on things. And he's addressing in the fourth paragraph these thoughts to Mr. Acanza's wife, but directing it to Mr. Acanza. I will also let her know going forward Byron would give her monthly or quarterly reports. Byron will supply her and you with quarterly reports, and I will supply any additional reports that is, I'm reading it literally, needed monthly or quarterly. Now, when we presented these during oral argument to Judge Savage, we literally handed them up. And Judge Savage is a remarkably fine judge. I've been in front of him many times. He seemed resistant to looking at these and considering them. In the context of the adverse insurance, here we have admissions by Towns that he is the controller, at least the operational head. And he has access to documents and documents will be forthcoming. And then they don't get issued. So we think we're entitled to an inference. And there's never been an explanation. There's never been a way to show what happened to the money that was used by beverages. We don't have that information either. So those are the reasons why we think that the inference would be proper and appropriate, an appropriate instruction to the malpractice jury that in the underlying case, it would have been, it likely would have been an instruction of negative inference. And here is why. That's why we think we have overcome that issue, Judge. Thank you. Thank you all very much for your patience. I do appreciate your time and the extended time you allowed me. Good afternoon, Jeffrey McCarran. I represent the appellees, the defendants in the case, Kleinbart LLC, Mr. Dunham and Mr. Schreiner. May it please the court. Mr. Frank just described a bit of a different case than is reflected in the amended complaint. There was no demand or complaint about the absence of shared certificates or proof of ownership. That information was not part of any requests that he made in the connection with pursuing documentation in this case. The proof deficiency that existed during the meeting, Judge Prater, to grant, enter summary judgment against the plaintiff, Mr. Nicanza, still exists because the plaintiff remains without the proof that he needed to establish his right of recovery in that underlying case, which he contended was a basis for fraud. Well, does that mean that if you want, well, is, is it the lack of the motion to compel from your standpoint, that means all of this should inure to his detriment, the fact that they didn't receive this? Because, for instance, on the emails that were just read, you know, clearly upon reading them negative, you could draw an adverse inference by the fact that no documents were ever forthcoming. No, you have to have a proceeding in which someone just refuses to produce the documents. That never occurred. Mr. Towns answered discovery in an underlying case. He said he did not have the materials. The plaintiff needed to establish that Mr. Towns either had control or other criteria that is essential to establishing an adverse inference. The activity in Columbia is of no significance. The rules in the underlying case were both cases in the United States. Rules are applicable to cases in the United States, so the rules which would apply with respect to these adverse inference concepts. The implied confession is not a concept that is part of the jurisprudence of the United States. And so in the underlying case, if the idea in the underlying case is that our client, my clients were to, uh, take measures to obtain the documents or to obtain an adverse inference sufficient to allow the plaintiff to fill the evidence void that he has. And he clearly has the evidence void because he has no proof how the that the money was used in any way different than he than for juices, which is what his contention is not about share certificates or some other proof of that he needed to do the same thing in the context of this case, which he never did. What use should we put to appendix to 36? I didn't hear the first two words your honor said. No worries. I said, What use should we put to appendix to 36? Because just upon viewing it, there are documents behind it. I understand that. Yes. But just upon viewing it, um, a substantial amount of money reflected on that document shows money going to beverages and not juices. Okay. As Judge Savage indicated, the existence of money having been wire transferred into a beverages account doesn't answer the question as to what happened to the money. All it does is reflected the money at some point in time temporarily or at least was in the beverages account. Mr Restrepo testified in the Columbia proceedings, which the plaintiff presented to the court in the context of evidence concerning the foreign laws issue, in which he testified that the money was only temporarily there and was used in accordance with Mr McCann's direction. The plaintiff has no evidence to contradict that whatsoever. The judge, Judge Savage, didn't make a that that was the only evidence when the issue doesn't support the plaintiff's position. That was the issue with respect to the the appendix, the page 2 36 in the appendix. Remember, that was Mr Nick Kansas. Uh, compilation. What the importance is, as the court indicated, and I have a copy here highlighted, is that Judge Prater, in the underlying case, decided that there were, and if you look, she decided, her honor decided that there were three wire transfers by Mr Nick Kansas. One made to Ayobusi, and she wrote in her opinion that that that money was sent into an account for juices. Then there were two subsequent or two other wire transfers, and your honor looks at 2 36. You'll see that in the top grid that there are two wire transfers made to Mr Drayton. It's below that, that it shows three wire transfers that Mr Drayton made after that. But what Judge Prater concluded, in her opinion, was that on those two occasions, Nick Kansas asked Drayton to wire money to Wazoo Beverages to be transferred to juices, and Mr Drayton obliged. So her honor determined that Mr Drayton did as he was supposed to with respect to getting the money to juices. So without some other evidence, and the plaintiff didn't ask to appeal this issue, then the decision by Judge Prater controls the issue about what happened with the money. So there's no evidence. Let me back up. So we have Judge Prater's decision, and we have the testimony by Mr Restrepo in Columbia. Neither source of proof about where the money went supports the plaintiff, and the plaintiff has nothing to contradict the testimony or the statement by Judge Prater in order to material fact on a genuine issue. There's nothing in Judge Savage's opinion that's inconsistent with the conclusions of Judge Prater, well, the findings of, right, the findings of Judge Prater that you've just alluded to with regard to where the money went. Is that right? That is my recollection of a comparison of the two opinions, yes. All right. That the only evidence presented established that the money was, in fact, used as directed by Mr Nicanza. And Mr Zoldin, the problem with his opinion is that he has no factual foundation to render an opinion about what even that the plaintiff could have succeeded. The reason for that is if your honor looks, your honors look at Judge Savage's opinion, you see that as he described, Mr Zoldin did not review Mr Nicanza's deposition, the transcript of Towne's trial, or the Columbia proceedings that are material. He relied on what Mr Nicanza had alleged in his amended complaint, and he accepted that without question and without corroboration. So that he didn't Zoldin was correct in acknowledging that he couldn't conclude that Mr Nicanza would be successful in this underlying case, that he would have been the prevailing party because he had no factual basis on which to make a conclusion that Mr Nicanza would have been able to establish that his money had been diverted because, in fact, there is no evidence presented. And in this record, this established the contention by Mr Nicanza that his money, in fact, had been diverted. All he has is his bare allegation and contention that his money was converted. But to this point, he hasn't produced any evidence whatsoever that didn't exist in the underlying case to establish that his money, in fact, was diverted. In a malpractice case, in a case within a case, when you say that the lawyer should have obtained evidence, then you need to come forward with the evidence that was missing that the lawyers didn't obtain in order to establish that the missing evidence would have made a difference in the outcome. The plaintiff is in no different position than the plaintiff was during the representation by Kleinbart. None. There's no additional evidence whatsoever. The proceedings in Columbia are completely irrelevant and immaterial. And whether juices or beverages produced the extent of what they had, they did produce documents, they did produce a witness to testify. But whether juices or beverages could have produced or should have produced, or someone believes that there might have been something more, is completely irrelevant. Juices and beverages were not defendants in the underlying case here in the United States. If they had... The proceeding in Columbia, maybe it matters, but juices and beverages didn't produce all that they could have or testimony to whatever extent they think they should have produced more material and information. But to the extent it relates to the underlying case, what juices and beverages could have produced, the plaintiff could have obtained an adverse inference against the four individuals who were sued in this case, in the underlying case. On that issue, the plaintiff needed to proceed in the district court here in the malpractice case, just as he contends should have been... My clients should have proceeded in the underlying case, which is to pursue them to establish a record that he was in fact entitled to the adverse inference. The only... Let me ask you a question. So let's change the facts a little bit. You don't like these facts? Not for the purposes of my hypothetical. So you have the same setup, fraud action, underlying action, and then malpractice. The difference is there's a motion to compel, right? But no documents are produced. You would enjoy the adverse inference. Is that adverse inference sufficient to satisfy the standard under Pennsylvania law that you would have prevailed, or by a preponderance of the evidence, you would have prevailed? Well, fraud is usually clear and convincing, so that would have been the requirement that he would have... No, no, no. I'm sorry. In the malpractice is preponderance. Sure. But in the context of the malpractice case, as it related to whether he would have succeeded as the prevailing party in the underlying fraud case, he would have needed to satisfy his burden to establish by clear and convincing evidence the existence of fraud. Go ahead. Okay. The malpractice aspect would receive the benefit... He would receive the benefit of a lesser standard of preponderance of the evidence, meaning whether or not there was a breach, but not with respect to the case within the case, because you need to apply the same standard as would burden of proof that would have existed. But in any case, there's two parts to this. He needed to satisfy the criteria in order to get an adverse inference. This was not a situation where someone took the fifth... That one of the defendants, for instance, took the fifth amendment. Remember, we're in my hypothetical. We're not talking about this case. Okay. I understand. In the hypothetical, the evidence that you have... Sure. Right? Is that the motion to compel was made and the documents were not produced. And my question is, would that be sufficient to satisfy the standard that you need to go forward, right? That in and of itself would not establish... No. The answer is, Your Honor, no. That would not in and of itself lead to either the adverse inference or an adverse inference to fill the evidence gap that he needed. It wouldn't be... What the plaintiff needed was something the equivalent to substantive evidence to establish the element. The element being that his money... That he had been deceived. And the only way he could prove that he was deceived, in fact, is to establish that his money was used, diverted, as he describes it, diverted in a way that was inconsistent with the way in which he understood it would be. In other words, it isn't... What he's calling an investment, and that's what he's been throughout, in a particular company, went to a different company, or was used in connection with a different company. So in my hypothetical, there'd be no way to prevail on your malpractice action in the absence of the production of documents that could support your theory. Well, it wouldn't necessarily... On the other lying floor. It wouldn't necessarily be limited to documents. That's what the plaintiff is always... It would have to be some evidence. Sure, it'd have to be some evidence to establish as to what happened to the money. That the money was, in fact, diverted. And remember that in the context of this case, what is important... And I know, I understand that the hypothetical was not limited to the fact, or not even the facts of this case. But let's keep that fact, which is that there were four individuals who were participants as shareholders or some ownership of an interest in the company, but not the company itself. In the United States, the companies were not sued. So he may have had a valid claim with respect to this diversion against one of the companies, or in fact, the company he claims that he was investing in, but not with respect to these four individuals. And so he wouldn't have been able to obtain the adverse inference. But my point is that he needed to have some substantive evidence, which could have been testimonial or documentary or something to establish the element. He couldn't go forward just by saying, I have an adverse inference. That would be insufficient to establish that his money was, in fact, diverted against these four individuals. Whether it would have been sufficient against the companies, conceivably. I haven't studied that issue because that's not what the underlying case was, and no one contends that they should have been defendants in the... That is, that beverages or juices should have been defendants in the underlying case. They're like, it was no... My understanding is there was no jurisdiction over them in the United States. Judge Cowen? Yes. Scrippo was a star witness, but how did the district court find no genuine issue of the material fact given his failure to produce the requisite document and the apparent consequences? I think consequences are severe of a failure to produce under Columbia law. Your Honor, I'm not quite sure of the answer. There was no genuine issue of material fact, if I understand what you're asking. There was no genuine issue of material fact created by the Columbia proceedings whatsoever. The Columbia proceedings are completely irrelevant to this case, even though they're dependent on by the plaintiff to support this idea of an adverse inference. The plaintiff does not contend that the law of the United States provided him with the benefit of an adverse inference. If you read his brief, what he says is that he wants to impose the law of Columbia or take the benefit of the law of Columbia where his lawyer contends there is this implied confession, which the plaintiff contends or characterizes is the same or similar to an adverse inference concept used in the laws of the United States and to apply it here. And as Judge Savage correctly found, it doesn't apply here because this is the United States and we have our own laws and rules that pertain to the issue. Did I answer that question correctly? Or did I answer your question is what I'm asking. But it seemed to me he was almost obliged to produce those documents as to what happened to the money. Your Honor, this is what happened. In the context of the case that he had, that is the underlying case or in this case, the plaintiff should have proceeded to obtain those documents from the four defendants he should have succeeded against. Now, his expert doesn't even acknowledge he would have, but he was contending he should have succeeded against those four individuals. He needed to establish that those individuals had the documents or had right to have the documents and move to compel them from them, get the court to adjudicate that their lack of compliance, if that was the situation, in fact, led to this evidentiary benefit that he might receive of an adverse inference. None of those steps were taken. None of them. There was never an effort other than a discovery request made in the underlying case, underlying case to the defendants, in particular Mr. Towns, who said he did not have those documents. The plaintiff would need to prove that the defendants in this case, the underlying case rather, had control of the documents. They didn't do that. The plaintiff didn't do that in the underlying case, as he alleges is the malpractice, and he didn't do it in this case, which is what he needed to do in order to establish that it would make a difference if my clients had done something different. Did that answer your question, Your Honor? I understand your position, yes. Any other questions? No, we're good. Thank you so much. Thank you, I'll be brief. Mr. Towns, in email traffic, claimed that he had access to the information and the documents. He claimed that he would send them quarterly or more frequently, and that others would facilitate that. Mr. Towns was examined during the phase of the case leading up to Judge Prater's dismissal of the fraud counts, but she kept going the breach of contract count. The conversion counts were also dismissed. The testimony of Corporal Representative Restrepo was taken in Columbia after the underlying case had concluded. None of the information that was given by Mr. Restrepo was available or offered to Judge Prater for analysis. Mr. Restrepo testified that he, too, had access to the information, but he didn't bring documents with him. He was given, I believe, three days immediately following the conclusion of his Colombian testimony to send the documents to the court. He didn't do that. Finally, the court, my colleague, Mr. McCarran, would like the court to believe that a negative inference without more is insufficient to demonstrate by preponderance of the evidence that the plaintiff would have won in the case. The transfer documents from beverages to juices were not produced. It is no fault of the evidence gathering in terms of, you can't prove a negative by showing a document that doesn't exist. It's not something that can be done. I guess the question is, as a matter of law, would an adverse or negative inference be enough to get you over the finish line on the question of, have you shown that you would have won by a preponderance of the evidence? I think so, Judge. I think that that is really fundamentally a jury question. That's really, in each case, it would be a factually specific analysis dependent very much on the jury's view of the credibility of the witnesses and everything else that went into the case. I doubt that that one fact itself, standing alone, would ever actually exist in reality. I think it would be augmented by the overall trappings of the case, the witnesses, and so forth. Thanks. Thank you very much, Your Honors. Thank you. Thank you, counsel, and we'll take the matter under advisement.